IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  3:22-cv-00686-HTW-LGI |
| v. | ) ) ) ) | |
| THE CITY OF JACKSON, MISSISSIPPI, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
## TO ENTER INTERIM STIPULATED ORDER

The Court should grant the United States' Unopposed Motion to Enter the Interim Stipulated Order, filed today at ECF No. 2 along with a Complaint (ECF No. 1) alleging claims under the Safe Drinking Water Act ("SDWA") against the City of Jackson, Mississippi ("the City"), because the Order contains important measures needed to protect public health. The SDWA authorizes this Court to enter permanent or temporary relief or "such judgment as protection of public health may require." 42 U.S.C. §§ 300g–3(b), 300i(a). The proposed Interim Stipulated Order would (1) set forth a Priority Project List with critical steps needed to stabilize the City's drinking water system, remedy problems that have contributed to the City's drinking water crisis, and establish sustainable practices for the future; (2) appoint Mr. Edward "Ted" Henifin to manage the City's drinking water system and implement the Priority Project List; and (3) stay this matter for a period of six months, during which time the United States and the City (together, "the Parties") will begin negotiations on a consent decree to address the City's long-term compliance with the SDWA. As discussed below, courts have fashioned similar remedies in

other public health emergencies, when public entities have required expert support to come into compliance with environmental laws. The proposed Order is the first step to address violations of the SDWA alleged in the Complaint and is consented to by the United States, the City, and the Mississippi Department of Health ("MSDH"). The City does not oppose the relief requested in the United States' Motion.

I.      The Public Health Emergency Regarding the City's Drinking Water System

The City's drinking water system has faced significant challenges for years, with frequent breaks in distribution lines and other equipment failures leading to service outages and warnings to boil tap water before consuming it (*i.e.,* "boil water notices"). (*See generally* Motion Attach. B, Declaration of Brian Smith ("Smith Decl.")). In late-August 2022, the majority of the System's customers completely lost access to running water after heavy rain caused the Pearl River to reach flood stage. (Smith Decl. at ¶ 13). Businesses and schools closed. (*Id.* at ¶ 14). Residents could not bathe, wash their clothes, or flush their toilets, and they had to rely on bottled water for drinking and cooking. (*Id.*). As this emergency demonstrates, immediate action is needed to ensure that the City's drinking water system can reliably provide its users with safe water until a final resolution of this case is reached.

The City's drinking water system includes a smaller groundwater system and a larger surface water system served by the O.B. Curtis and J.H. Fewell Water Treatment Plants (collectively, "drinking water system" or "the System"). (Smith Decl., Ex. 1 (2022 Assessment) at EPA_0000061; Motion Attach. C, Declaration of Bryan Myers ("Myers Decl."), Ex. 1 (2020 Inspection Report) at EPA_0000035–36). In February 2020, EPA conducted a compliance inspection of the System that identified numerous issues with staffing, operations, maintenance, and water quality. (Myers Decl., Ex. 1 (2020 Inspection Report) at EPA_0000034). The inspection findings led EPA to issue an Emergency Administrative Order ("Emergency Order")

to the City under Section 1431, 42 U.S.C. § 300i, of the SDWA effective April 2, 2020. (*See* Myers Decl., Ex. 2 (Emergency Order)). In the Emergency Order, EPA determined that existing conditions in the System presented an imminent and substantial endangerment to users, giving rise to the potential presence of, among other things, *E. coli*, *Cryptosporidium*, and *Giardia* in the drinking water. (*Id.* at EPA_0010614–17).

The System continued to have problems in early 2021. Extreme cold weather caused insufficiently protected equipment to freeze, resulting in a shutdown of one of the water treatment plants and leaving nearly 100,000 residents without water service for up to three weeks. (Smith Decl. at ¶¶ 6, 11). An electrical fire at the O.B. Curtis plant in April 2021 damaged pump controls and led to another widespread loss of pressure in the System and loss of water service to most of the System's customers. (Smith Decl. at ¶ 11). EPA and the City entered into an Administrative Compliance Order on Consent ("Consent Order") under Section 1414(g) of the SDWA, 42 U.S.C. § 300g-3(g), effective July 1, 2021. (*See* Myers Decl., Ex. 4 (Consent Order)). Since 2020, EPA has issued three notices of noncompliance to the City for violations of drinking water regulations. (Myers Decl., Ex. 5–7 (Notices of Noncompliance)).

In July 2022, EPA issued a report titled: "City of Jackson Distribution System Assessment: Summary of Findings and Assessment Team Recommendations." (Smith Decl., Ex. 1 (2022 Assessment) at EPA_0000058). The report noted that the System was significantly understaffed, with key management positions and operator positions vacant. (*Id.* at EPA_0000068–69). This forced employees to work long hours, left workers unable to conduct preventative maintenance, and led to high employee turnover. (*Id.* at EPA_0000069). The report also identified numerous deficiencies in the general operation and maintenance of the O.B. Curtis and J.H. Fewell Water Treatment Plants. (*Id.* at EPA_0000063–64).

During the last week of August 2022, excessive rainfall and extreme flooding exacerbated pre-existing problems at the O.B. Curtis Water Treatment Plant by disturbing the water treatment process and preventing the plant from producing enough potable water to establish adequate pressure in the drinking water distribution system. (Smith Decl. at ¶ 13). As a result of the decreased water pressure, most System users lost the ability to use water for any purpose, including drinking, cooking, or basic safety and hygiene. (*Id.* at ¶¶ 13–14).

On August 29 and 30, 2022, the City Mayor, the Governor of Mississippi, and the President of the United States each declared that an emergency existed in the City. (*See* Mayoral Proclamation of Local Emergency, City of Jackson, Mississippi (Aug. 29, 2022);[1] State of Mississippi, Office of the Governor, Proclamation (Aug. 30, 2022);[2] President Joseph R. Biden, Jr. Approves Mississippi Emergency Declaration (Aug. 30, 2022)).[3] The City's emergency declaration expressed its intention to "continue[] to explore all avenues to address the staffing levels, deferred maintenance and emergency repairs at both water treatment plants" and requested local and statewide assistance to support the City's response and recovery efforts. (Mayoral Proclamation (Aug. 29, 2022)). The state's emergency order directed MSDH and the Mississippi Emergency Management Agency ("MEMA") to establish a state incident command center and to take action to abate the emergency. (Governor Proclamation (Aug. 30, 2022)). Local, state, and federal agencies then joined together to form a Unified Command, consisting of subject matter experts from EPA, the Federal Emergency Management Agency ("FEMA"), the City, MSDH, and MEMA. (Smith Decl. at ¶15). The Unified Command set several objectives,

---

[1] Available at https://www.jacksonms.gov/executive-orders/.
[2] Available at https://mcusercontent.com/08cb3e52aa1308600f84d49ea/files/8169eb65-c9c5-d7fe-7bc5-f2a811032381/PROC_SOE_Water_Plant_8_30_22.pdf.
[3] Available at https://www.whitehouse.gov/briefing-room/presidential-actions/2022/08/30/president-joseph-r-biden-jr-approves-mississippi-emergency-declaration-2/.

including reestablishing minimum levels of water distribution from the O.B. Curtis and the J.H. Fewell Water Treatment Plants. (*Id.* at ¶¶ 15–16, 18).

On September 6, 2022, water pressure was restored, and water service resumed. (*Id.* at ¶ 18). However, the boil water notice, which had been in place since July 29, 2022, due to pre-existing water quality issues, remained in effect until September 15, 2022. (*Id.* at ¶¶ 17–18). Although City water service is now generally available, many of the underlying factors that contributed to the August-September emergency remain unresolved. (Smith Decl. at ¶¶ 20, 23–26). Since September 15, an additional 42 boil water notices have been issued for various portions of the System. (*Id.* at ¶ 26). Additionally, many of the state and federal resources provided during the emergency period are no longer available because the state's emergency declaration expired on November 22, 2022, and the federal emergency declaration expired on November 28, 2022. (*Id.* at ¶ 21).

## II.     Authority of the Court

The SDWA specifically grants this Court authority to issue temporary or permanent injunctive relief and "such judgment as protection of public health may require," 42 U.S.C. §§ 300g–3(b), 300i(a), and this Court may use "the full panoply" of its equitable powers to fashion a remedy that addresses the City's urgent drinking water needs. *United States v. Alisal Water Corp.*, 431 F.3d 643, 654 (9th Cir. 2005) (stating that the SDWA contains no language limiting a court's inherent equitable authority); *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982) (holding that Congress intended the endangerment provision of the SDWA "to invoke the broad and flexible equity powers of the federal courts in instances where" human health was threatened). The scope of the Court's equitable authority is particularly expansive when, as here, the public interest is involved. *See Alisal Water Corp.*, 431 F.3d at 654 (citing *Porter v. Warner*

*Holding Co.*, 328 U.S. 395, 398 (1946)); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996).

The EPA Administrator may seek a permanent or temporary injunction under the SDWA to abate an imminent and substantial endangerment. 42 U.S.C. § 300i(a). The Parties have worked diligently and cooperatively to develop the Interim Stipulated Order which provides for preliminary relief until a final resolution of the case is achieved. The Court has the authority to enter interim injunctive relief agreed upon by the parties as an exercise of its broad equitable power. *See, e.g.*, *Wine Country Gift Baskets.com v. Steen,* 612 F.3d 809, 812 (5th Cir. 2010) (noting that the parties agreed to a preliminary injunctive order blocking enforcement of contract provisions during the lawsuit); *Am. S. Ins. Co. v. Williamson,* No. 3:13CV689 DPJ-FKB, 2013 WL 11327715, at *1 (S.D. Miss. Nov. 12, 2013) (granting preliminary injunctive relief that the parties agreed upon); *Gilchrist Mach. Co. v. Komatsu Am. Corp.,* 601 F. Supp. 1192, 1195 (S.D. Miss. 1984) (noting that the parties agreed to a temporary order preventing the defendant from terminating its franchise agreement with plaintiff during the litigation).

The Court's equitable authority includes the inherent power to appoint a third party as a court-appointed official. *See United States v. Am. Tobacco Co.*, 221 U.S. 106, 186–87 (1911). Indeed, the Fifth Circuit has recognized court-appointed officials as available equitable remedies "in the context of ensuring a governmental entity's compliance with court orders," *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (internal citations omitted), and a court in the Southern District of Mississippi recently appointed an official to remedy longstanding problems in the Hinds County jail system. *United States v. Hinds Cnty.*, No. 3:16-CV-489-CWR-RHWR, 2022 WL 3022385, at *2 (S.D. Miss. July 29, 2022) (citing *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093–94 (9th Cir. 2010)). Courts may appoint third-party officials whose duties and

responsibilities have been negotiated by the parties. Stipulated Order, *Jones v. Gusman*, No. 2:12-cv-00859 (E.D. La. Jun. 21, 2016), ECF No. 1082 (appointing an independent compliance director to operate the Orleans Parish Jail); Consent Decree, *United States v. Town of Fort Gay*, Civ. No. 3:09-0855 (S.D.W.V. Jan. 12, 2012), ECF No. 62 (appointing receiver in negotiated settlement to oversee town waste water treatment plant and water works). "'[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.'" *Alisal*, 431 F.3d at 658 (quoting *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)).

The appointment of a third-party official is "particularly appropriate where public health issues are implicated." *United States v. Alisal Water Corp.,* 326 F. Supp. 2d 1010, 1012 (N.D. Cal. 2002). In fact, federal courts have appointed officials to oversee environmental violators, including governmental entities, in a variety of contexts because of public health concerns. *See, e.g.*, *United States v. Gov't of Guam*, No. 02-00022, 2008 WL 732796 (D. Guam Mar. 17, 2008) (receiver appointed and charged with bringing about compliance with the Clean Water Act); *United States v. Acadia Woods Add. #2 Sewer Co.,* 41 F. Supp. 2d 632, 633 (W.D. La. 1999) (receiver appointed to run defendants' wastewater treatment plants to achieve compliance with decree and Clean Water Act); *United States v. City of Detroit,* 476 F. Supp. 512, 520 (E.D. Mich. 1979) (administrator appointed to run City's sewage department to secure compliance with decree and Clean Water Act); *United States v. Alder Creek Water Co.*, Civil No. 79-1090-JU, 1984 U.S. Dist. LEXIS 17371 (D. Or. Apr. 23, 1984) (receiver appointed in SDWA case to comply with the Act's reporting and monitoring requirements); *Ohio v. Chem-Dyne Corp.*, No. CA-80-03-0021, 1981 WL 5234, at *2 (Ohio Ct. App. Oct. 28, 1981) (affirming appointment of a state receiver to eliminate hazardous waste located at a hazardous waste site). This Court

therefore possesses ample legal authority to appoint an official to manage the City's drinking water system.

**III.     Need for a Court-Appointed Official to Manage the City's Drinking Water System**

The United States supports appointment of an official—called an "Interim Third-Party Manager" ("ITPM") in the proposed Order—to oversee the City's drinking water system because the System's conditions require expert assistance to ensure that urgent measures detailed in the Stipulated Order are implemented. Appointment of an ITPM is particularly important here because of the serious public health concerns at stake. *Cf. Alisal*, 326 F. Supp. 2d at 1014.

As described in Section I above, the City's drinking water system has faced significant challenges for years. Financial problems, including lost revenue caused by a faulty billing system, have contributed to poor maintenance, limited capital improvements, and ultimately, System failures. (*See* Smith Decl., Ex. 1 (2022 Assessment) at EPA_0000069–71). Technical issues, caused or compounded by severe understaffing, have also plagued the System—for instance, EPA's 2022 report noted deficiencies with valve maintenance, storage tank cycling, distribution system flushing, and data collection. (*Id.* at EPA_0000063–64).

From 2017 through 2021, the drinking water system experienced frequent line breaks, occurring at an average annual rate of 55 breaks per 100 miles of line. (*Id.* at EPA_0000063, EPA_0000073). By comparison, one industry benchmark goal is no more than 15 breaks per 100 miles of line per year. (*Id.* at EPA_0000063). And since May 2020, the drinking water system has experienced over 340 boil-water notices, (Smith Decl. at ¶ 26), during which the City advises users to boil water prior to using it for drinking, cooking, preparing baby formula or medicine, washing dishes, or any other activity that could lead to water consumption. (*Id.* at ¶ 17).

As these statistics demonstrate, the City currently lacks the financial and operational resources to effectively manage and run the System and make the urgent changes needed to

reduce risks to public health. EPA has already issued an Emergency Administrative Order, effective on April 2, 2020, an Administrative Compliance Order, effective on July 1, 2021, and three notices of noncompliance to the City in the last two years. A new approach is warranted, and the City agrees that an ITPM is the best short-term method to stabilize the drinking water system.

**IV.     The Proposed Interim Third-Party Manager**

The Parties have agreed that Mr. Henifin should act as the ITPM because of his expertise, professional background, and familiarity with the City's drinking water system due to his current involvement with the Unified Command.

Mr. Henifin's *curriculum vitae* is appended to the United States' Motion as **Attachment D, Exhibit 1**. Highlights of Mr. Henifin's qualifications include:

- Registered professional engineer with over 40 years of service in public works;
- Former Director of Public Works for Hampton, Virginia, a city of about 146,000 residents;
- Former General Manager of Hampton Roads Sanitation District, which provides regional wastewater treatment to 18 cities and counties in southeastern Virginia, from 2006 until February 2022;
- Senior Fellow at the U.S. Water Alliance, a nonprofit organization focused on national water issues, where he works on the Equitable Infrastructure Initiative; and
- Positions in a number of professional organizations, including serving on the boards of the National Association of Clean Water Agencies and VIRGINIA Forever and serving as the president of the Virginia Association of Municipal Wastewater Agencies.

\* \* \* \* \*

In addition to being professionally qualified to manage Jackson's drinking water system, Mr. Henifin is familiar with the System through his role as a Loaned Executive from the U.S. Water Alliance, since mid-September 2022. (Motion Attach. D, Declaration of Edward Henifin ("Henifin Decl.") at ¶¶ 4–5). In that role, he has participated in the Unified Command and provided City employees, including the City's Public Works Director, with on-the-ground technical assistance support, such as advice on immediate and longer-term funding priorities and agreements. (*Id.* at ¶¶ 6–7). Mr. Henifin is also familiar with the O.B. Curtis and J.H. Fewell Water Treatment Plants, and he has worked closely with state officials at MEMA and MSDH and federal officials at EPA and FEMA. (*Id.*). His ability to immediately engage the problems facing the City's drinking water system makes him particularly well-suited for this temporary role of ITPM.

## V.     The Role of the Proposed Interim Third-Party Manager

Pursuant to the Stipulated Order, Mr. Henifin would be tasked with operating and maintaining the City's drinking water system in compliance with the SDWA, implementing the Priority Project List (discussed below), and taking steps towards abating the imminent and substantial endangerment to the public health. (Motion Attach. A ("Proposed Interim Order") at ¶ 5). His education and management experience will be useful to lead City efforts on two main fronts: technical and financial.

On the technical front, Mr. Henifin, as ITPM, would build on the responsibilities he has already undertaken as the Loaned Executive. The ITPM would be better positioned to attain adequate staffing, proper operations, and sufficient maintenance of the System. (*See id.* at ¶¶ 6.a, 6.e, 6.j, 6.l). The ITPM would have the power to hire and contract with those necessary to implement the Priority Project List and otherwise direct any contractors or City employees as to operation and maintenance of the drinking water system. (*Id.* at ¶¶ 6.e–f, 6.j–l).

10

On the financial front, the ITPM would have financial and fiduciary control over budgets related to the System and could enter into contracts for capital improvements to the System. The ITPM would, with the assistance of a financial advisor, develop a Financial Management Plan for the City's drinking water system that takes into consideration, *inter alia*, short-term, mid-term, and long-term operation and maintenance and capital improvement funding needs. (*Id.* at ¶ 6.p). The ITPM would also help the City identify and apply for all pertinent funding sources, in order to increase revenue coming into the City's Public Works Department. (*See id.* at ¶ 6.r). And he would operate, maintain, and control the Water Sewer Business Administration, which is the administrative department within the City's Department of Public Works that handles water, sewer, and trash billing and collections. (*Id.* at ¶ 5, 6.b). Finally, if the ITPM determines that modification to the City's drinking water rate structure or a rate fee increase is needed to implement the Priority Project List or otherwise comply with the requirements of the Stipulated Order, he may, in consultation with the Mayor and through the City Council, initiate a process to make those changes. (*Id.* at ¶ 6.q.i). If the City does not implement the rate changes, the ITPM may make the changes if no rate change has been made in the preceding 365 days. (*Id.* at ¶ 6.q.ii).

The ITPM would submit quarterly status reports to keep the Court informed of his activities. Those reports would include a description of projects and activities conducted during the quarter, a summary of any encountered or anticipated delays that may affect performance or implementation of the Stipulated Order, an accounting of his budget, a description of any modifications made to the Priority Project List, and a projection of work to be performed during the next quarter. (*Id.* at ¶ 16.a). Thus, the Court would have an opportunity to monitor and oversee the ITPM's work.

In addition to this oversight, the ITPM's authority is subject to several limitations enumerated in the proposed Stipulated Order. The ITPM may not, for instance, encumber or sell any real property asset of the City, consolidate the drinking water system with other utilities or privatize the System, or apply for any loan that exceeds the amount of additional debt capacity recommended in the Financial Management Plan. (*Id.* at ¶ 7).

## VI.  The Priority Project List

The proposed Stipulated Order includes a Priority Project List developed in coordination with technical staff from EPA, MSDH, and the City's Department of Public Works and Mr. Henifin. (Henifin Decl. at ¶ 8). These projects will address near-term needs of the City's drinking water system and alleviate the current emergency situation, with the ITPM having primary responsibility for implementation. (Proposed Interim Order at ¶ 15 & Appx. A (Priority Project List)). Key projects on the List include:

- Establishing, supporting, and maintaining a contract(s) for operation and maintenance of the System;
- Winterizing the System so it can withstand cold weather events;
- Fully implementing optimized corrosion control treatment at O.B. Curtis and J.H. Fewell Water Treatment Plants; and
- Studying and analyzing the distribution system responsible for delivering drinking water from the treatment plants to households or other connections.

As the ITPM implements the Priority Project List, the Parties will attempt to negotiate a consent decree that addresses long-term needs of the City's System and compliance with the SDWA. Any consent decree negotiated by the Parties would be subject to a public comment period of at least 30 days, after which it would be submitted to the Court for approval and entry

as a final judgment in this matter. In the absence of adequate, timely progress in reaching such a resolution, the United States would litigate to judgment.

## VII. Requested Stay of the Case

The proposed Order includes a provision that stays litigation of the case for six months, so that the Parties may focus all efforts on negotiating a long-term solution to the City's drinking water issues in the form of a consent decree. This Court possesses the discretionary power to grant such a stay in order to manage its docket. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). A stay is appropriate here because it will conserve the Parties' resources and promote judicial economy, and a stay will not create hardships or inequities for either Party. The public will not be harmed, because while the Parties negotiate, the ITPM will be working toward implementing improvements to the System, including the projects on the Priority Project List, and the ITPM will report to the Court quarterly regarding his progress. Additionally, the City does not oppose staying this matter.

## CONCLUSION

Urgent action is needed to stabilize the City's drinking water system. The proposed Interim Order sets forth a Priority Project List to remedy problems that have contributed to the City's drinking water crisis and establish sustainable practices for the future. As a registered professional engineer and long-serving public works manager who is familiar with the City's drinking water system through his work with the Unified Command, Mr. Henifin is capable of implementing the Priority Project List and leading the System through its near-term technical and financial challenges. Previous courts have endowed third parties with authority to assist public entities in similar public health emergencies. While Mr. Henifin implements the Priority

Project List, the Parties will begin negotiations on a consent decree to address the System's long-term compliance with the SDWA. The United States therefore requests that the Court sign and enter the Interim Stipulated Order, appended to the United States' Motion as **Attachment A.**

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Karl Fingerhood
KARL FINGERHOOD (PA Bar No. 63260)
ANGELA MO (CA Bar No. 262113)
STEFAN J. BACHMAN (SC Bar No. 102182)
DEVON LEA FLANAGAN (VA Bar No. 87444)
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-7519
Fax: (202) 616-2427
Email: Karl.Fingerhood@usdoj.gov
    Angela.Mo@usdoj.gov
    Stefan.Bachman@usdoj.gov
    Devon.Flanagan@usdoj.gov

DARREN J. LAMARCA
United States Attorney for the
Southern District of Mississippi

ANGELA GIVENS WILLIAMS
Chief, Civil Division
Assistant United States Attorney

                                                          */s/ Jennifer Case*
                                                          JENNIFER CASE (MS Bar No. 104238)
                                                          Assistant United States Attorney
                                                          United States Attorney's Office
                                                          501 East Court Street, Suite 4.430
                                                          Jackson, Mississippi 39201
                                                          Tel: (601) 965-4480

OF COUNSEL:

SUZANNE RUBINI
SUZANNE ARMOR
MICHELE WETHERINGTON
United States Environmental Protection Agency
Region 4
61 Forsyth Street S.W.
Atlanta, Georgia 30303

JAMES VINCH
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460